## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

VCA CENVET, INC.,                    *

    **Plaintiff**                    *

    v.                    *                    **CIVIL NO. JKB-11-1763**

CHADWELL ANIMAL HOSPITAL, LLC,   *
*et al.*,
                             *

    **Defendants**                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

VCA Cenvet, Inc. ("Plaintiff")[1] brought this suit against Chadwell Animal Hospital, LLC ("Defendant")[2] for alleged breach of contract and unjust enrichment.[3]  Now pending before the Court is Plaintiff's motion for summary judgment.  (ECF No. 84.)  The issues have been briefed (ECF Nos. 84, 85, 87), and no hearing is required, Local Rule 105.6.  For the reasons explained below, Plaintiff's motion for summary judgment is DENIED.

## I.   BACKGROUND

The facts here are largely unchanged as recounted in ECF No. 69.  In summary, Plaintiff provides commercial lab services to animal hospitals, and Defendant is an animal hospital in Maryland.  The parties entered into a four-year contract titled Lab Services Agreement ("LSA"), whereby Defendant agreed to purchase lab services exclusively from Plaintiff for the duration of the contract.  In return, Plaintiff agreed to give Defendant a "loyalty rebate" equal to 17% off all

---

[1] The Court recognizes that Plaintiff changed its corporate name to Antech Diagnostics, Inc. during the course of this litigation.  (ECF No. 84-1 at 1 n.1.)  We refer to Plaintiff as VCA Cenvet or simply "Plaintiff" for the sake of consistency with earlier proceedings.
[2] Summary judgment was previously entered in favor of a second Defendant, Dr. Keith Gold.  (Order, ECF No. 32.)
[3] The Court dismissed Plaintiff's claim for unjust enrichment in a prior order.  (ECF No. 70.)

lab services for that same term.  Defendant breached the contract by terminating it after one year, and Plaintiff filed this suit on June 28, 2011 seeking damages for lost profits.  (ECF No. 1.) Defendant filed a motion for summary judgment in June, 2012 (ECF No. 44), and Plaintiff filed a cross-motion for summary judgment in July, 2012, (ECF No. 47).  The Court denied Plaintiff's motion, granted Defendant's motion, and ordered that the case be closed.  (ECF No. 70.)

Plaintiff appealed the Court's decision to the United States Court of Appeals for the Fourth Circuit.  (ECF No. 73.)  The Court of Appeals first affirmed this Court's denial of Plaintiff's motion for summary judgment, explaining that Plaintiff had failed to "establish[] the occurrence and extent of its lost profits as a matter of law."  *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, 552 Fed. Appx. 217, 220 (4th Cir. 2014).  Specifically, the appellate court noted that Plaintiff had failed to include a calculation of its fixed costs in estimating lost profits. *Id.*  The Circuit Court went on to reverse this Court's grant of Defendant's motion for summary judgment, holding that Plaintiff does not seek unconscionable damages, and also that Plaintiff's calculation was sufficient to survive a motion for summary judgment.  *Id.* at 220-22.

On remand, Plaintiff filed this motion for summary judgment to decide the remaining issue of damages.  (ECF No. 84.)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing

the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III.    ANALYSIS

Plaintiff seeks an order granting summary judgment in its favor and granting $176,778 in damages for lost profits. (ECF No. 84.) Plaintiff reaches this sum by applying the equation laid out in the appellate court's ruling: Lost Profits = Gross Revenue MINUS Variable Costs MINUS Fixed Costs. (ECF No. 84-1 at 1-2 (citing *VCA Cenvet*, 552 Fed. Appx. 217).)

The standard measure of damages for breach of contract under California law is the aggrieved party's expectation interest.[4] *See New W. Charter Middle Sch. v. L.A. Unified Sch. Dist.*, 114 Cal. Rptr. 3d 504, 515 (Cal. Ct. App. 2010). "This is described as the benefit of the bargain that full performance would have brought." *Id.* (citing *Akin v. Certain Underwriters at Lloyd's London*, 44 Cal. Rptr. 3d 284, 288 (Cal. Ct. App. 2006)). As a general principle, "damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent." *Grupe v. Glick*, 160 P.2d 832, 840 (Cal. 1945).

---

[4] The LSA is governed by California law. (LSA, ECF No. 47-1 ¶ 6.)

"[O]nce their existence has been so established, recovery will not be denied because the amount cannot be shown with mathematical precision." *Resort Video, Ltd. v. Laser Video, Inc.*, 42 Cal. Rptr. 2d 136, 146 (Cal. Ct. App. 1995) (quoting *Berge v. Int'l Harvester Co.*, 190 Cal. Rptr. 815, 822 (Cal. Ct. App. 1983)).

However, recovery must be limited to net profits, because "[t]o allow [P]laintiff to recover a judgment based in part on [its] gross profits would result in [its] unjust enrichment." *Gerwin v. Se. Cal. Ass'n of Seventh Day Adventists*, 92 Cal. Rptr. 111, 119 (Cal. Ct. App. 1971) (internal citations omitted).  The Court of Appeals held that net profits equals gross revenue less variable and fixed costs.  *VCA Cenvet*, 552 Fed. Appx. at 220.

Plaintiff asks the Court to find that there is no remaining genuine issue of material fact, and that Plaintiff is owed damages of $176,788 as a matter of law.  The Court denies Plaintiff's request, and finds that Plaintiff's estimate fails to demonstrate the absence of any genuine dispute of material fact for at least three reasons.

First, Plaintiff has not offered sufficient evidence to support its calculation of gross revenue.  Plaintiff asserts that it would have realized an additional $279,779 in gross revenue had Defendant not breached the LSA.  (*See* ECF No. 84-1 at 7-8.)  It justifies this estimate by taking its total gross revenue in Year 1 of the LSA, $86,180, and assuming that this total would increase by 4% each year for the remaining three years of the deal.[5]  Plaintiff bases this 4% increase on "industry experience, its projected annual fee increases for its tests and services, and its projections about the likelihood that Chadwell's business with VCA Cenvet would grow over the term of the LSA."  (*Id.*)

Plaintiff fails to provide sufficient evidence to prove that 4% is a reasonably certain measure of annual increases in projected revenue.  In its Response to this motion, Defendant

---

[5] $89,627 in Year 2, $93,212 in Year 3, and $96,940 in Year 4.  (ECF No. 84-1 at 7-8.)

references affidavits and deposition testimony that suggest that gross revenue could have remained stagnant or even decreased from year-to-year through the course of the LSA. (ECF No. 85 at 8-12.) This evidence is sufficient such that a reasonable jury could render a verdict in conflict with Plaintiff's estimate, and perhaps more closely aligned with Defendant's view of gross revenue. Thus, estimated lost gross revenue cannot be decided on this motion for summary judgment.

While the Court finds lingering ambiguity in Plaintiff's calculation of lost gross revenue, the Court disposes of Defendant's argument that a post-breach offer by Plaintiff should be incorporated into that calculation. (*See id.* at 6-8.) This assertion is without merit. Apparently, after Defendant expressed its intention to breach the LSA, Plaintiff offered a "forgivable loan" worth $150,000 if Defendant would change its mind and continue to perform on the contract. (*Id.*) Plaintiff's offer is best seen as an offer to settle. It did not alter the terms of the contract at the time of the offer, and the contract was never amended accordingly.[6] Thus, this alleged offer does not introduce a genuine issue of material fact about the calculation of lost gross revenue.

Second, the Court rejects Plaintiff's contention that the measurement of variable costs was decided by the appellate court. (ECF No. 84-1 at 2.) The Circuit Court *affirmed* the judgment of this Court, denying Plaintiff's motion for summary judgment. *VCA Cenvet*, 552 Fed. Appx. at 220. As in this Court's original decision, *VCA Cenvet, Inc. v. Chadwell Animal Hospital*, 2012 WL 4005542 (D. Md. 2012), the Fourth Circuit agreed that there were lingering genuine issues of material fact. While the Circuit Court raised a new ground for denying Plaintiff's motion—the absence of fixed costs in Plaintiff's calculation of lost profits—it made

---

[6] Plaintiff's offer to settle may or may not have some evidentiary value in a contested trial, on the question of what Plaintiff reasonably expected its profits to be. If it does, though, these facts might support Plaintiff's position: that this was a highly profitable relationship—so much so that Plaintiff could have forfeited $150,000 and *still* made a profit—and thus the breach was highly damaging.

no judgment whatsoever on this Court's grounds for denial of Plaintiff's motion. *VCA Cenvet*, 552 Fed. Appx. at 219-20. This Court reiterates that Plaintiff's calculation is insufficient to justify summary judgment because it lacks evidence to support its estimated variable costs. This issue of material fact remains genuine and outstanding, and Plaintiff failed to clarify its calculation in this latest round of briefs.

Plaintiff claims that it would have incurred $82,525 in variable costs over the final three years of the LSA had the contract been fully performed.[7] Plaintiff justifies this estimate by calculating the percentage of company-wide revenue that went towards paying variable costs in each of the breached years.[8] (*Id.*) Plaintiff then applies those percentages to the annual lost revenue calculations discussed *supra*. (*Id.*)

Plaintiff again fails to provide sufficient evidence to support its estimated variable costs. Plaintiff's brief relies on a thin financial summary with factually bare assertions of the variable-cost-to-revenue ratio for each relevant year. (*Id.* (citing ECF No. 84-3 at 3, 9)) Further, even if a fact-finder agrees with Plaintiff's method to rely on variable-cost-to-revenue ratios, these calculations will inevitably fluctuate depending on what that same fact-finder determines was Plaintiff's lost gross revenue for each relevant year. Put differently, even if the Court agrees as a matter of law that the variable cost of Year 2 equals 29.4% of gross revenue in Year 2, a fact-finder must still first determine the relevant gross revenue to complete this calculation. The material fact of variable costs—the actual number—remains at issue, at least until a fact-finder resolves the issue of Plaintiff's lost revenue. Thus, estimated variable costs cannot be decided on this motion for summary judgment.

---

[7] $26,350 in Year 2, $27,684 in Year 3, and $28,501 in Year 4. (ECF No. 84-1 at 8-9.)
[8] 29.4% in Year 2, 29.7% in Year 3, and 29.4% in Year 4. (ECF No. 84-3 at 3, 9.)

Third, Plaintiff has not offered sufficient evidence to support its measure of fixed costs. The Court recognizes that it is difficult to measure an individual client's share of fixed costs; the nature of fixed costs is such that they remain essentially unaffected by the addition or subtraction of individual clients. That said, the Fourth Circuit expressly held that Plaintiff must factor fixed costs into its lost profits calculation. *VCA Cenvet*, 552 Fed. Appx. at 220.

Plaintiff estimates Defendant's share of fixed costs by first totaling company-wide fixed costs for the final three years of the LSA, and then dividing each annual total by the number of clients serviced in that same year. (ECF No. 84-1 at 9-10.) Through this equation, Plaintiff claims that it would have incurred $20,466 in fixed costs over the final three years of the LSA had the contract been fully performed.[9] Plaintiff has failed, however, to demonstrate the absence of any genuine dispute of material fact; particularly related to whether clients' share of costs should be weighted differently based on how much they contributed to total revenue and expenses in each year. Thus, estimated fixed costs cannot be decided on this motion for summary judgment.

The Court recognizes at least three remaining genuine issues of material fact, and leaves open the possibility that previously completed discovery may raise others. These questions are best suited for further factual development at trial, where experts and representatives of the parties can testify and be subject to cross-examination.

---

[9] $6726 in Year 2, $6775 in Year 3, and $6965 in Year 4. (ECF No. 84-1 at 10.)

**CONCLUSION**

Accordingly, an order shall issue DENYING Plaintiff's motion for summary judgment. (ECF No. 84.)  A telephone conference will be set in to address whether there should be another settlement conference before a magistrate judge, and to schedule the jury trial in this case.

DATED this 10th day of September, 2014.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge